UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILMERRYS RAMOS,<br>    *Plaintiff*,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC, et al.,<br>    *Defendants*. | )<br>)<br>)   3:23-CV-1 (OAW)<br>)<br>)<br>)<br>)<br>)<br>) |

## RULING ON MOTIONS TO DISMISS

**THIS ACTION** is before the court upon the motions to dismiss filed by Defendant Amazon.com Services, LLC ("Amazon"), ECF No. 20, and Defendants Metro One Loss Prevention Group, Inc. ("Metro") and M-1 Corporation ("M-1," and together with Metro, "Metro Defendants"), ECF No. 28.  The court has reviewed both motions, Plaintiff's responses to both motions, ECF Nos. 26 and 32, Defendants' replies thereto, ECF Nos. 27 and 33, and the record in this matter and is fully apprised in the premises.  For the reasons discussed herein, Amazon's motion is **GRANTED,** and the Metro Defendants' motion is **GRANTED in part and DENIED in part.**

### I.  BACKGROUND[1]

Plaintiff worked for Amazon in one of its fulfillment centers from June 2021 until April 2022.  Amazon contracts with the Metro Defendants to provide on-site security guards at this particular fulfillment center.  On April 21, 2022, as Plaintiff was leaving the workplace at the end of her shift, she alerted one of the security guards that a coworker

---

[1] All allegations related herein are taken from Plaintiff's amended complaint, filed at ECF No. 13.

1

threatened to physically hurt her. She appealed to the guard for protection, but he responded that Amazon and Metro/M-1 policy prohibited him from intervening.

Plaintiff next went to Human Resources ("HR") and reported the threat to one of the HR representatives. The representative told Plaintiff to go into a nearby room and write out a statement. Before Plaintiff could reach the room, though, the coworker in question assaulted her, punching her, pushing her, and pulling out her hair. The HR representative and the security guard saw the assault but did not intervene. After the attack, the coworker left the premises without being detained in any way.

The police were called, and Plaintiff reported the assault (and Defendants' failure to prevent it or to intervene) to the responding officers.

Plaintiff completed her statement for the HR representative, who told Plaintiff that she was not to blame, but that she would be placed on paid suspension for one week pending an investigation, per company policy. Instead, Amazon terminated her a few days later. Plaintiff brought suit against Amazon and the Metro Defendants, asserting various employment and tort claims.

## II. LEGAL STANDARD

To withstand a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The

plausibility standard is not a probability requirement, but the pleading must show, not merely allege, that the pleader is entitled to relief.  *Id.*  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth.  *Id.*  "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  However, when reviewing a 12(b)(6) motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor.  *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

### III.   DISCUSSION

Plaintiff asserts nine claims total in her amended complaint.  Six claims are asserted against all defendants: negligence (Count Three); negligent supervision, hiring, and training (Count Four); negligence by way of respondeat superior (Count Five); intentional infliction of emotional distress (Count Six); negligent infliction of emotional distress (Count Seven); and prima facie tort (Count Eight).  The other three claims are asserted against Amazon alone: wrongful discharge (Count One); breach of the covenant of good faith and fair dealing (Count Two); and violation of Section 31-51q of the Connecticut General Statutes (Count Nine).  She does not oppose dismissal of Counts One and Nine in their entirety, nor does she oppose dismissal of Counts Three, Four, Five, Seven, and Eight as to Amazon (though she maintains these claims against the Metro Defendants).

The court turns first to the two claims against Amazon (Counts Two and Six).

### A. <u>Amazon</u>

Amazon argues that both Count Two (violation of the implied covenant of good faith and fair dealing) and Count Six (intentional infliction of emotional distress) must be dismissed for failure to state a claim. The court takes each claim in turn.

#### i. ***Count Two***

Amazon contends that Plaintiff cannot state her contract claim in Count Two because she had no contract with Amazon, and there is no important public policy at play here that might subject Amazon to liability for terminating an at-will employee.

Of course, Plaintiff clearly did have an employment contract with Amazon. Though apparently unwritten, Plaintiff, as an employee of Amazon, agreed to provide labor to Amazon in exchange for wages. This is a contract. And the Supreme Court of Connecticut has held that the covenant of good faith and fair dealing is implied into every contract, even contracts for at-will employment. *Magnan v. Anaconda Indus., Inc.*, 193 Conn. 558, 572 (1984). But the covenant only safeguards a contracting party's reasonable expectation that the terms of the specific contract will be honored. *Id.* Where the contract provides that an employee can be terminated for any reason, at any time, the covenant will not provide any protection against dismissal. *Id.*

However, like any contractual term, the hallmark of an at-will employment contract will be unenforceable where it violates public policy. Accordingly, Count Two could survive dismissal if Plaintiff can show that her termination was contrary to public policy.

Plaintiff argues that she was terminated for reporting the lack of security at her workplace to the police, and that her dismissal violates the important public policy of not terminating victims of workplace crimes. She offers no authority showing that any court,

state or federal, ever has recognized this as a public policy. She also provides no Connecticut statute from which a court might conclude that there is such a public policy.

In the court's own review of Connecticut's laws, though, it has found a statute governing the "care required of a master for his servant's safety," Conn. Gen. Stat. § 31-49, which requires an employer to "exercise reasonable care to provide for his servant a reasonably safe place in which to work," including the hiring of "fit and competent persons as his colaborers . . . ." *Id.* Moreover, the court has found precedential Connecticut case law holding that this law "expresses a clear and defined public policy requiring an employer who conducts business in Connecticut to provide a reasonably safe work place to its employees," violation of which policy can provide grounds for a wrongful termination claim. *Parsons v. United Techs. Corp., Sikorsky Aircraft Div.,* 243 Conn. 66, 79—80 (1997). More specifically, the Supreme Court of Connecticut has held that a wrongful discharge claim may lie where an employee refuses to work under hazardous conditions, provided those conditions are not within the normal scope of the employee's job. The court concludes from this research that this same statute can provide grounds for a claim of the breach of the implied covenant of good faith and fair dealing.

However, Plaintiff's claim still fails because, even by her own account, she was not terminated for refusing to work in unusually hazardous conditions, or even for reporting an unusually hazardous condition to her employer. She contends she was terminated for reporting the alleged violation of state law to the *police*, a public body, and thus this particular set of facts falls within the auspices of Connecticut's whistleblower law. *See* Conn. Gen. Stat. Ann. § 31-51m (prohibiting any employer from punishing an employee for reporting a suspected violation of any law to a public body). And an important

5

restriction upon an employee's ability to bring a common-law contract claim predicated upon the violation of an important public policy is that the plaintiff must have no other recourse to recover for the violation. Courts allowing "a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was *otherwise without remedy* and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." *Burnham v. Karl & Gelb, P.C.*, 252 Conn. 153, 159–60, 745 A.2d 178, 182 (2000) (quoting *Atkins v. Bridgeport Hydraulic Co.*, 5 Conn.App. 643, 501 A.2d 1223 (1985)) (emphasis in original) (internal quotation marks omitted). Here, Plaintiff has a statutory remedy available to her, and so the court, following Connecticut authorities, cannot allow this common-law claim to proceed. *See id.* (holding that the remedy available in the whistleblower statute precludes a plaintiff from bringing a common-law wrongful discharge claim).

Even if the court were to construe Count Two to state a claim under the whistleblower statute, that claim, too, would fail. The statute requires a claimant to exhaust all administrative remedies before bringing suit, which Plaintiff does not allege she has done, and even then the civil action must be brought within 90 days of the final administrative determination or the violation. *Id.* Plaintiff was terminated in April 2022 and did not file this complaint until January 2023. Accordingly, she is time-barred from bringing a whistleblower claim.

The court also notes that a claim under § 31-49 also would fail under the facts as alleged. In the first instance, every court to rule upon the issue has found that this statute does not provide for a private cause of action. *See, e.g., Roa v. HomeAides, LLC*, No.

6

NNH-CV-21-6118471-S, 2023 WL 3641352, at *3 (Conn. Super. Ct. May 16, 2023); *Bailey v. Grocery Haulers, Inc.*, No. 3:15CV1835 (JBA), 2017 WL 1025664, at *4 (D. Conn. Mar. 16, 2017); *Sisbarro v. Airgas E., Inc.*, No. CV054010897S, 2006 WL 164968, at *2 (Conn. Super. Ct. Jan. 6, 2006); *Lopez v. Burris Logistics Co.*, 952 F. Supp. 2d 396, 416 (D. Conn. 2013), on reconsideration (Sept. 23, 2013).  And even assuming the statute could embody a separate public policy which could underpin a common-law claim (such as breach of the implied covenant of good faith and fair dealing), the court must conclude Plaintiff has failed to allege that Amazon violated this statute.  The law requires only that an employer exercise *reasonable* care to provide an employee a *reasonably* safe work environment.  Plaintiff's account of the events of April 21, 2022, does not show that Amazon acted unreasonably.  There is no indication that Amazon ought to have known of the danger to Plaintiff by her coworker until Plaintiff alerted HR on that day, and in response HR attempted to isolate Plaintiff to collect additional information.  The court concludes that no jury could find a lack of due care in this circumstance.

Accordingly, Count Two must be dismissed as to Amazon.

      ii.   ***Count Six***

In Count Six, Plaintiff asserts a claim for intentional infliction of emotional distress ("IIED") predicated upon several of Amazon's actions toward her, including its allegedly inadequate response to Plaintiff's report that she was in immediate danger and Amazon's termination of her despite HR's initial assurance that her job was safe.

In order to state an IIED claim, a plaintiff must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3)

that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Barry v. Posi-Seal Int'l, Inc.*, 36 Conn. App. 1, 19 (1994), certification granted, cause remanded, 235 Conn. 901 (1995). Amazon contends that none of the conduct Plaintiff alleges (including failing to intervene in the attack itself) qualifies as "extreme and outrageous." Plaintiff disagrees.

The court agrees with Amazon that none of the alleged actions is "extreme and outrageous." The court already has determined that Plaintiff's termination was not contrary to public policy, and therefore Amazon was perfectly within its contractual right to dismiss Plaintiff, an at-will employee, for any reason or no reason at all. Thus, the termination itself was not extreme or outrageous. And even taking the termination in conjunction with HR's representations to Plaintiff, those representations do not alter the at-will nature of Plaintiff's employment, and an employer's apparent inconstancy hardly is extreme or outrageous. Further, the court already has found that attempting to secure Plaintiff in a separate room, away from the assailant, to collect a formal statement from her is not unreasonable, much less "extreme and dangerous."

Accordingly, the court grants Amazon's motion as to Count Six as well.

### B. <u>Metro Defendants</u>

Plaintiff opposes the Metro Defendants' motion in its entirety, and she maintains all of Counts Three through Seven against them.[2] The Metro Defendants argue that all claims must be dismissed as to them because (1) M-1 is the wholly owned subsidiary of Metro, and liability cannot be imputed to the subsidiary where Plaintiff has not shown that one is the alter ego of the other, and (2) each Count fails to state its claim against Metro.

---

[2] Plaintiff does not respond to Metro's arguments to dismiss Count Eight, and so the court will consider that claim abandoned.

Turning to the first argument, the court agrees that there is nothing in the record to support subsidiary liability in this case. Generally, "subsidiary corporations are not deemed to be the agents of their corporate parents." *Sterling v. Securus Techs., Inc.*, No. 3:18-CV-1310 (VAB), 2019 WL 3387043, at *4 (D. Conn. July 26, 2019) (quoting *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 195 (2d Cir. 2010), aff'd, 569 U.S. 108 (2013)). The principle does not apply, though, where the subsidiary is an agent, or a mere instrument, for the parent. *Id.* Plaintiff baldly asserts in her opposition that she has alleged that the two companies are one and the same, but this overstates the contents of the complaint. Plaintiff does refer to the Metro Defendants as "Metro One LPSG/M-1" throughout her pleading, but without any further allegation that each is the alter ego for the other such that suit may be brought against both entities. This conclusory kind of pleading does not even meet the requirements of Rule 8, much less the standard to pierce the corporate veil.

Accordingly, the court dismisses all Counts as to M-1.

Turning to the merits of Counts Three through Seven as stated against Metro, it is important first to identify the specific conduct that form the basis for Plaintiff's claims. To that end, the court must agree with Metro that Plaintiff cannot bring any claim against it related to her termination or alleged retaliation against her, to her work environment, or the hiring of the assailant, since these are each the responsibility of her employer, and Metro did not employ Plaintiff. The only conduct for which Metro conceivably could be liable is the conduct of its employee, the security guard, that is to say, the security guard's failure to protect Plaintiff when she informed him that she was in danger from a coworker, and when he failed to intervene when Plaintiff was being assaulted.

9

The court disagrees with Metro, though, as to whether Plaintiff has alleged the security guard's actions as predicate conduct for Counts Three through Seven. While the complaint could have been clearer, it satisfied the pleading standard of Rule 8 insofar as it stated that the claims were asserted against both Amazon and the Metro Defendants, and it describes the conduct of Metro's employee. The court therefore will determine whether those allegations adequately support the claims against Metro.

Counts Three, Four, and Five all assert tort claims arising from alleged negligence. In order to carry any of these three claims, Plaintiff must show that Metro owed her a duty of care, which Metro argues she cannot do. Plaintiff takes the contrary position. The specifics of Plaintiff's argument are difficult to discern, though, as she appears to take a shotgun approach to the issue, vaguely referring to a duty arising from ownership of property, contract, and common law.

"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action." *Raspberry Junction Holding, LLC v. Se. Connecticut Water Auth.*, 340 Conn. 200, 211 (2021) (quoting *Demond v. Project Service, LLC*, 331 Conn. 816, 835 (2019)) (internal quotation marks omitted). "Whether a duty exists is a question of law for the court, and only if the court finds that such a duty exists does the trier of fact consider whether that duty was breached." *Ruiz v. Victory Properties, LLC*, 315 Conn. 320, 328 (2015). "If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." *Raspberry Junction* 340 Conn. at 211 (quoting *Demond*, 331 Conn. at 835) (internal quotation marks omitted).

Plaintiff's position on the question of duty rests entirely upon the foreseeability of the harm she endured. The court agrees that the injury to Plaintiff was foreseeable. She had informed the security guard that her coworker had threatened her, and thus the attack was a foreseeable event. But foreseeability is only part of the analysis to determine whether a duty exists. Plaintiff's own cited authority states that "[a] simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists." *Jarmie v. Troncale*, 306 Conn. 578, 590 (2012) (quoting *Pelletier v. Sordoni/Skanska Construction Co.*, 286 Conn. 563, 593–94 (2008)). The court still must determine whether Metro should bear any responsibility for the foreseeable harm. *Id.*

It is clear that there is no duty arising under a premises liability theory, as there is no allegation that Metro had any ownership or control of Plaintiff's workplace. Similarly, there is no contractual relationship between Plaintiff and Metro, so there is no direct contractual duty. Plaintiff still may be owed a duty as a third party, though.

It is well-established under Connecticut law that "there generally is no duty that obligates one party to aid or to protect another party." *Doe v. Saint Francis Hosp. & Med. Ctr.*, 309 Conn. 146, 175, 72 A.3d 929, 948 (2013) (quoting *Ryan Transportation, Inc. v. M & G Associates*, 266 Conn. 520, 525-26 (2003)). One exception to this principle, though, is where "a special relation exists between the actor and the other which gives to the other a right of protection." *Id. a*t 181. Such a relationship can arise from a voluntary or contractual undertaking to provide services to another. In such circumstances, such undertaking also can give rise to a duty to third parties. *Id.* The Supreme Court of Connecticut has cited approvingly the idea that "'liability ... does not arise from, nor is it

11

circumscribed by, the contract [but] arises, if at all, from [the defendant's] undertaking" to render services to protect another." *Demond*, 331 Conn. 816, 843 (quoting *Thompson v. Bohlken*, 312 N.W.2d 501, 507 (Iowa 1981)) (alterations in original).  Thus, Metro's contract with Amazon is relevant insofar as it memorializes Metro's undertaking, and the terms of that contract are relevant insofar as Metro's liability can extend to those harms that not only are foreseeable, but that are within the scope of the duties it undertook to perform.  *Id.* at 845.

Metro asserts that its contract with Amazon only obligated it to provide loss prevention services, but Plaintiff alleges in her complaint that the contract was for comprehensive security services, including safeguarding the workforce.  If Plaintiff can show that Amazon had contracted with Metro to keep its employees safe at the workplace, then the security guard's failure to do anything upon learning of the pending threat could qualify as negligence in the eyes of a jury.  And at the dismissal stage of litigation, a court is obligated to accept as true all allegations in a complaint.  Accordingly, the court finds Plaintiff has stated her negligence claims in Counts Three, Four, and Five.[3]

The court next turns to the claims for intentional and negligent infliction of emotional distress (Counts Six and Seven, respectively).  Metro argues that both Counts must be dismissed as to it, because Plaintiff's alleged injuries are those for which Metro could not be liable (directing her to a small room, telling her that her job was safe, etc.) because it does not employ her.  It further argues that the conduct for which Metro could be liable (failing to intervene in the attack) is not "extreme and outrageous," so Count Six

---

[3] The court notes that some or all of these three Counts may be duplicative, but the parties do not raise this argument and so the court will not address it.

must be dismissed for that reason, too. Plaintiff responds that she has pled both adequately enough to survive dismissal.

As to Count Six, the court agrees with Metro that the security guard's actions do not rise to the level of severity required for an IIED claim. "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Bell v. Bd. of Educ. of City of W. Haven*, 55 Conn. App. 400, 409 (1999). The court cannot conclude that failing to intervene in a physical altercation between two individuals is conduct that society would find wholly intolerable. Thus, the court dismisses Count Six as to Metro.

As to Count Seven, in Connecticut, a claim for negligent infliction of emotional distress has four elements: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003). Additionally, "an essential element of a negligent infliction claim is the existence of a duty . . . ." *Vega v. Sacred Heart Univ., Inc.*, 836 F. Supp. 2d 58, 61 (D. Conn. 2011).

As discussed supra, Plaintiff has alleged that Metro had a duty to her arising from its contract with Amazon. If she proves that point at trial, a juror reasonably could find all the remaining elements of the claim satisfied. Plaintiff's attack certainly was foreseeable to the security guard; she herself alerted him to the danger. And his failure to take any action to protect her despite his contractual duty reasonably could show both that his

conduct was unreasonable, and that it both created a risk of causing emotional distress and actually caused such distress. Thus, Count Seven survives dismissal as to Metro.

The court notes that Plaintiff may be able to allege additional facts sufficient to support some of the claims dismissed herein, and so she will be permitted to amend her pleading. The court also notes, though, that many of the claims that survive this ruling are dependent upon Plaintiff showing that she was owed a duty under Metro's contract with Amazon. Thus, the terms of that contract are dispositive of almost all the claims against Metro, save the IIED claim. *Watts v. Chittenden*, 301 Conn. 575, 586 (2011) ("Unlike a claim based on negligence . . . the existence of a duty is not a required element for establishing liability for intentional infliction of emotional distress."). Accordingly, the court hereby notifies the parties that future proceedings in this action will address this issue more particularly. The court will issue additional orders on this point once Plaintiff has had an opportunity to amend.

## IV. CONCLUSION

Accordingly, it is hereupon **ORDERED AND ADJUDGED** as follows:

1. Amazon's Motion to Dismiss, ECF No. 119, is **GRANTED.** All Counts are dismissed as to Amazon.
2. The Metro Defendants' Motion to Dismiss, ECF No. 148, is **GRANTED in part.**
    a. All Counts are dismissed as to M-1.
    b. Counts Seven and Eight are dismissed as to Metro.
3. Any amended complaint shall be filed on or before **Wednesday, April 30, 2025.**

**IT IS SO ORDERED** at Hartford, Connecticut, this 31st day of March, 2025.

                                                            /s/
                                    OMAR A. WILLIAMS
                                    UNITED STATES DISTRICT JUDGE